**Rosa ROMANI, Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY.**

No. 01–3853.

United States Court of Appeals, Third Circuit.

Submitted April 26, 2002.

Decided May 14, 2002.

Before BECKER, Chief Judge, SCIRICA, and RENDELL, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Rosa Romani appeals from an order of the District Court that affirmed the Social Security Commissioner's decision to deny her disability benefits. The Administrative Law Judge ("ALJ") found that Romani had a severe disorder of the sacrum and a history of ulcerative colitis, but that Romani did not have a listed impairment or the medical equivalent and that she was not prevented from performing her past relevant work as a machine operator. Ro-

mani sought review of the ALJ's decision by the Appeals Council, but the Council concluded that there was no basis for review. This amounted to a final decision by the Commissioner. After the District Court affirmed this decision, Romani made a timely appeal to this Court.

We are bound by the Commissioner's findings of fact if they are supported by substantial evidence in the record. "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." E.g., Morales v. Apfel, 225 F.3d 310, 316 (3d Cir.2000) (internal citations omitted). Although we are deferential, we "retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." Id. at 317. Because aspects of the record indicate that Romani could not perform her past relevant work, and the ALJ's decision that she could is not supported by substantial evidence, we will reverse and remand.

Romani worked as a machine operator for Frigidaire from 1977 to 1990 making plastic parts for air conditioners. Tr. 37, 40. She testified that she had to stand and bend up and down, lift, use a spray can and other tools, and move mold headings. Tr. 39–40. The job did not involve frequent lifting or carrying of more than 10 pounds and the heaviest weight she had to lift was over 20 pounds. Tr. 40. She also testified that the job had to be done very quickly: "The machines have to be open[ed] and close[d] only in ... 20 seconds, 30 seconds." Tr. 40.

In concluding that Romani could perform her past work, the ALJ rejected the evidence of a treating physician, which normally is afforded great weight in disability determinations. See, e.g., Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000). Here, Dr. Hochberg, who treated Romani from 1988 to 1990, opined that she should not carry objects weighing more than five pounds and should not lift objects weighing more than two pounds. Tr. 233. He specifically eliminated sitting and standing from the list of work activities that Romani could perform. Later examiners estimated that Romani could lift slightly more.[1] Nonetheless, the evidence of Dr. Hochberg, coupled with the other evidence referenced below, makes it questionable whether Romani could do her prior work.

One of the reasons the ALJ gave for rejecting Dr. Hochberg's evaluation of Romani's lifting capacity was "the overall lack of consistency in [Romani's] alleged complaints and reported activities of daily living." Tr. 20. But the ALJ's reliance on the claimant's daily activities is misplaced, as it appears that driving a car is the most exertion she engages in—Romani reported that she was unable to do household maintenance, but watched TV and drove a car. Tr. 173, 266, 296.

The evidence from Dr. Hochberg is bolstered by the testimony of Dr. Mylod, Romani's medical expert. Dr. Mylod, who had more than a decade of experience as a medical expert at Social Security hearings, was the sole expert witness at the hearing. Although he had not examined Romani, he had reviewed all her medical records. He testified that:

---

1. For instance, Dr. Collins stated that she could occasionally lift 20 pounds and frequently lift 10. Tr. 123. Dr. Chungloy ordered her to refrain from lifting 25 pounds, but was focused on her recovery from surgery to repair an umbilical hernia, not on her back pain. Tr. 230–31. Dr. Mylod gave the same opinion, Tr. 62, presumably based on his review of these reports.

[Romani's] ability to stand in an eight-hour day would be no more than two hours, 15 minutes at a time based on—because of the radiculopathy and the meningocele that's in the sacral. And her ability to sit is restricted also. Again, because of the pressures in the spinal cord and in the disks (inaudible) are actually increased when seated. So she has radiculopathy when she's seated. And the radiculopathy in her hand is certainly going to affect her hand—her ability to do fine manipulations. And I estimate her ability to lift probably no more than ten pounds, probably less than 20.

Tr. 62. The ALJ rejected Dr. Mylod's opinion "because it appears to be based on an uncritical acceptance of [Romani's] self-serving complaints," but accepted the view of the "medical consultants who reviewed the evidence of record at both the initial and reconsideration levels of the adjudication review process" that Romani did not suffer from a listed impairment. Tr. 16–17. The ALJ failed to explain how lack of examination made Dr. Mylod's views as to the claimant's condition and ability to perform work suspect.

Moreover, the medical reports consistently note the slowness of Romani's movement, while her work as a machine operator required speed. Her own report that she walked very slowly, Tr. 187, was corroborated by medical records from 1995 that reflect that she "walked and moved slowly" and "with difficulty." Tr. 281, 284. Further, a 1997 report states that she could walk on her heels and toes "slowly," Tr. 325, and Dr. Vekhnis, who examined Romani in January 1997, reported that all of her motions were "very slow." Tr. 328, 329. All of these reports were from physicians and therapists who had treated and examined Romani.

Finally, the ALJ acknowledged that an individual's symptoms, including pain, "can play a significant role in determining her residual functional capacity," but rejected Romani's allegations of pain as "unsupported by objective medical evidence" and "also inconsistent with the weight of the nonmedical evidence and ... not, therefore, entirely credible." Tr. 19, 20. We have stated that the standard as to subjective pain requires:

(1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain "may support a claim for disability benefits," and "may be disabling"; (3) that where such complaints are supported by medical evidence, they should be given great weight; and (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

*Green v. Schweiker,* 749 F.2d 1066, 1068 (3d Cir.1984) (citations omitted).

Romani testified at the hearing that she had constant pain, and she consistently reported such pain during her medical and therapeutic visits. Tr. 44, 287.[2] Dr. Mylod testified that the medical record supported Romani's complaints of pain, including back, neck, and joint pain. Tr. 58. Further, Dr. Vekhnis found that Romani "has a history of sacral fracture and this gives her a significant amount of pain."

---

**2.** The ALJ's statement that Romani had not "even complained of, or been actively treated for, back pain since 1991," Tr. 17, is inaccurate. In 1996, Dr. Bahrt recorded Rosari's complaint of pain, including lower back pain, that had "reached a point where she can hardly function at all." Tr. 307. That same year, Romani's complaint of back pain is recorded in a psychological evaluation. Tr. 295. Also, in 1992, Dr. Bahrt had recorded "a great deal of pain in the spinal area" including the lower back. Tr. 310, 311.

Tr. 329. Even the ALJ points to MRIs performed in November 1988 and August 1989, that "yielded abnormal findings suggestive of a thecal sac meningocele or arachnoidal cyst in the distal end of the sacrum" and "electrodiagnostic testing done in June 1990 [that] was consistent with bilateral sacral radiculopathy." Tr. 17. This evidence of a spinal cyst and its connection to the reported constant pain was not adequately explained by the ALJ.

For the reasons above, we conclude that the ALJ's decision is not supported by substantial evidence and will REVERSE the District Court's dismissal of Romani's claim and REMAND to the District Court with directions to remand to the Commissioner for additional proceedings in accordance with this opinion.